# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KENNO SOLESBY-FUNMAKER,

               Plaintiff,

v.

SANDRA HAUTAMAKI, DAVE TARR, CAPTAIN SAWALL, and CAPTAIN HOCH,

               Defendants.

Case No. 18-CV-1205-JPS

**ORDER**

        Plaintiff, who is incarcerated at Redgranite Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). He recently paid the $400 filing fee for this action in full.

        Notwithstanding the payment of any filing fee, the Prison Litigation Reform Act requires the Court to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal

theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-

pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's case began when he was issued a conduct report by prison officials for violating a judicial no-contact order concerning his girlfriend. (Docket #1 at 2). After a hearing, he was punished, in part, with a 90-day suspension of all personal mail privileges. *Id.* He filed an inmate complaint on February 12, 2018 challenging the blanket mail suspension. *Id.* The inmate complaint examiner ("ICE") agreed that, pursuant to Wis. Adm. Code § DOC 309.04(8), mail restrictions must be confined to "a specific person for a specific period." (Docket #1-1 at 1). On February 21, the ICE recommended that the mail suspension be voided, and the warden concurred upon his review on February 26. (Docket #1 at 2–3).

However, on February 23, while the inmate complaint was pending with the warden, the prison security director, Dave Tarr ("Tarr"), issued a memorandum to Plaintiff in which he imposed an identical 90-day ban on any incoming or outgoing personal mail. *Id.* at 3; (Docket #1-1 at 4). Tarr based his blanket ban on the authority of Section 309.04(7), which provides that "[f]or violations of administrative rules or policies and procedures made by institutions relating to mail, mail privileges may be suspended by

the security director or adjustment committee." Wis. Adm. Code § DOC 309.04(7). That provision does not contain any limitations on the length or scope of a mail suspension, in contrast to Section 309.04(8).

Plaintiff, angered at the re-imposition of the blanket ban despite his successful inmate complaint, wrote to deputy warden Sandra Hautamaki ("Hautamaki"). (Docket #1 at 3). He apparently argued that if a prisoner cannot receive a blanket mail suspension through disciplinary proceedings, surely a security director cannot impose such a sanction on his own. *See id.* Hautamaki issued a memorandum on February 27 in which she voided the mail suspension imposed in connection with the conduct report. (Docket #1-1 at 5). She did not disturb Tarr's mail suspension, however, stating that "the conduct report disposition is independent from any subsequent action taken by the Security Director." *Id.*

Next, on March 5, Plaintiff tried to mail a letter to the supervisor of his state parole agent. (Docket #1 at 3). The letter was opened and read by a correctional officer, Captain Sawall ("Sawall"), the next day. *Id.* Plaintiff's letter read, in part: "[i]f I'm so [domestically] violent to females what makes you think I'm not going to be toward her. I don't like her she is the one reason I got all my time. I see her as simple minded. We are gonna have problems." *See* (Docket #1-1 at 6, 9).[1] Sawall interpreted these statements as threats against the parole agent, so he issued Plaintiff a conduct report. *Id.* at 6; (Docket #1 at 3). After a disciplinary hearing on April 19, held before Captain Hoch ("Hoch"), Plaintiff was found guilty of making threats and

---

[1]Plaintiff did not attach a copy of his letter to the complaint, as it was not returned to him and was destroyed by prison staff after a subsequent disciplinary hearing. He does not contest the contents of his letter as it was reported by Sawall in the conduct report and the officer presiding over the disciplinary hearing in his hearing report.

was punished with a 120-day loss of phone and email privileges. (Docket #1 at 4).

Plaintiff filed an inmate complaint a few days before the hearing, on April 13. *Id.* He complained that the conduct report was unfair and harassing, and that he was exercising his First Amendment rights in his letter. (Docket #1-1 at 10). The ICE rejected the complaint, as challenges to conduct reports must first be made through an appeal of the outcome of the disciplinary hearing. *See id.*; Wis. Adm. Code § DOC 310.06(2). Plaintiff therefore appealed the conduct report to Hautamaki, who affirmed Plaintiff's punishment on April 30. (Docket #1 at 4). Plaintiff tried to re-file his inmate complaint several times thereafter, but each was rejected by the ICE for procedural infirmities. *Id.*; (Docket #1-1 at 11).

Plaintiff raises essentially two sets of constitutional claims: those arising from Tarr's blanket mail suspension, and those arising from Sawall's conduct report. Only the first set survives the Court's review at screening.

Plaintiff claims that the blanket mail suspension imposed by Tarr constituted cruel and unusual punishment, in violation of the Eighth Amendment, and violated his First Amendment right to send and receive mail. (Docket #1 at 6–7). He further alleges that in refusing to order Tarr, her subordinate, to rescind his ban, Hautamaki conspired with him to violate Plaintiff's constitutional rights and to retaliate against him for complaining about the original mail suspension. *Id.* at 7.

It is well-settled that prison inmates have a First Amendment right both to send and receive mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). That right can, however, be lawfully restricted. *Procunier v. Martinez*, 416 U.S. 396, 414 (1974), holds that restrictions on outgoing mail

must be "generally necessary" to protect a legitimate government interest. Regulations concerning incoming mail are easier to justify. *Thornburgh v. Abbott*, 490 U.S. 401, 411–14 (1989). They are reviewed using the deferential standard articulated in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), which provides that a prison policy will be upheld if it is reasonably related to legitimate penological interests. Yet, whether applying *Turner* or *Martinez*, deference must be accorded to prison officials because the judiciary does not possess the necessary expertise and resources to deal with the "difficult and delicate problems of prison management." *Thornburgh*, 490 U.S. at 407.

Based on the allegations of the complaint, the Court cannot say that the balancing required by *Turner* or *Martinez* has a clear winner with respect to Tarr and Hautamaki. It may be that the Wisconsin Administrative Code permits blanket bans on mail privileges in some contexts and not others, but this case is about what the Constitution will allow. It might also be true that, as is suggested by Hautamaki's memorandum, Tarr's suspension was based on some further misconduct by Plaintiff and was not merely a re-imposition of the ban imposed in connection with the original conduct report. Yet to draw that conclusion is to countermand the lenient standard of review at screening.

If Tarr's punishment was for the same conduct addressed in the original conduct report, it becomes plausible, given the timeline of events, that Tarr and Hautamaki retaliated against Plaintiff for grieving about the initial mail suspension. For that reason, the Court will allow First Amendment claims related to the mail suspension and concomitant retaliation to proceed against Tarr and Hautamaki. The Eighth Amendment claim against Tarr is a poor fit for these circumstances, and since the First Amendment provides a better framework, the Eighth Amendment claim

will be dismissed. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (a court should situate a prisoner's claim within the most salient constitutional provision); *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Court will now consider Plaintiff's other set of claims arising from Sawall's conduct report. Plaintiff contends that Sawall violated his First and Fourteenth Amendment rights by opening and reading his outgoing mail without notice. (Docket #1 at 5). He further complains that the disciplinary hearing officer, Hoch, imposed cruel and unusual punishment by issuing a 90-day suspension of all of Plaintiff's personal mail privileges. *Id.* at 6. This latter allegation is patently false, however, as the copy of the hearing report Plaintiff attached to his complaint demonstrates that Hoch's sanction was 120 days without email and phone privileges. (Docket #1-1 at 9). Hoch said nothing about regular mail.

Plaintiff's claims against Sawall and Hoch cannot proceed. First, Plaintiff's right to send and receive mail does not include to a right to privacy. The First Amendment protects against government censorship of Plaintiff's correspondence but does not preclude prison officials such as Sawall from reviewing letters for contraband. *Kaufman*, 419 F.3d at 685; *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).[2] Further, because he had no legitimate claim of entitlement to the privacy of his mail, his Fourteenth Amendment due-process claim against Sawall is likewise without merit.

---

[2]Plaintiff generally calls this letter "personal mail." (Docket #1 at 5–6). In his April 13 inmate complaint, however, he referred to it as "legal mail." (Docket #1-1 at 10). Plaintiff's letter was addressed to the supervisor of his parole agent, not his attorney or a court, and it discussed no legal matters, so it is not "legal mail" in the First Amendment sense and is not entitled to the heightened protection given to legal mail. *See Kaufman*, 419 F.3d at 686; *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff says that Tarr's mail suspension required Sawall to return the letter unopened, (Docket #1 at 3), but even if this is true as a matter of prison policy, it is not a violation of the Constitution, *see Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Finally, the claim against Hoch fails even when properly analyzed under the First Amendment, not Eighth Amendment, rubric. Hoch did not impose a blanket ban on all types of personal mail; Plaintiff was free to send and receive letters. He could, therefore, communicate with anyone he wished, even if by less convenient means than phone or email. *Beard v. Banks*, 548 U.S. 521, 529 (2006) (available alternative means of expression support the constitutionality of a restriction). Neither *Turner* nor *Martinez* impose a least-restrictive-means requirement on prison officials. *Thorongburgh*, 490 U.S. at 410–11; *see also Arsberry v. Illinois*, 244 F.3d 558, 564–65 (7th Cir. 2001) ("Not to allow [prisoners] access to a telephone might be questionable on other grounds, but to suppose that it 'would infringe the First Amendment would be doctrinaire in the extreme.'").

Moreover, Plaintiff does not contest the validity of the basis for his punishment—that he made threats of violence against his parole agent. Preventing and deterring the transmission of violent threats to state officials is well within the prison's purview, given its legitimate interests in security, order, punishment, and rehabilitation. *Martinez*, 416 U.S. at 413; *Turner*, 482 U.S. at 89–91; *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). Crucially, the institution did not try to censor mere unflattering opinions expressed by a prisoner. *Martinez*, 416 U.S. at 413–14. Thus, under the deferential standards enunciated in *Martinez* and *Turner*, Plaintiff has no chance of success in challenging the propriety of Hoch's decision. *See Gaines v. Lane*,

790 F.2d 1299, 1305 (7th Cir. 1986) (affirming dismissal at the pleading stage where the regulation's justification is known and it is clearly valid); *Singer*, 593 F.3d at 534 (the rationality of the challenged regulation can be a threshold factor); *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (the plaintiff bears the burden to show that a regulation is invalid).

For the reasons stated above, Plaintiff will be permitted to proceed on (1) a claimed violation of his First Amendment right to send and receive mail and (2) a claim of retaliation for his exercise of his First Amendment rights, both against Defendants Tarr and Hautamaki. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that Defendants Captain Sawall and Captain Hoch be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this Order are being electronically sent today to the Wisconsin Department of Justice for service on the remaining Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this Order; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The Court further advises Plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge